## Budai v. Budai

*Lawrence M. Kelly,* for plaintiff.
*Norman J. Barilla,* for defendant.

CAIAZZA, *J.,* October 11, 1988 — We have before us for consideration plaintiff's petition for rule to show cause why the Great American Insurance Company should not be held in contempt of court.

Plaintiff, Nadine Budai, filed an action for child support against John Budai Sr. at no. 180 of 1983, Domestic Relations Division. On September 14, 1987, this court entered an order whereby Budai was to pay child support at a rate of $200 per month for the support of plaintiff's children.[1] On October 1, 1987, the court entered a modified order of attachment of workmen's compensation benefits whereby Budai's workmen's compensation benefits were to be attached to the extent of $200 per month. A copy of the attachment order was forwarded to the Great American Insurance Company by certified mail, return receipt requested, on October 14, 1987. Great American received the order on October 16, 1987.

At the time of the attachment order, Budai was received $735 per month in workmen's compensation benefits from Great American.[2] Pursuant to the attachment order, Great American withheld $46.15 per week from Budai's benefits and paid the amount

---

1. The pleadings incorrectly state the date of the support order to be October 1, 1987.

2. The Great American Insurance Company is the insurance carrier for Budai's employer, Pak Industries Inc., of West Middlesex, Pa.

to the Lawrence County Domestic Relations Office. The amount the plaintiff received comprised 27 percent of the monthly workmen's compensation benefits received by Budai.

On or about February 1, 1988, Great American paid Budai the sum of $25,000 in commutation of his workmen's compensation claim. Great American did not attach and pay over to the Domestic Relations Office any of the foregoing sum in accordance with the attachment order.

Plaintiff subsequently filed the instant petition. Plaintiff has taken the position that the attachment order was applicable to the $25,000 sum paid to Budai and that she would be entitled to 27 percent of that amount, which computes to be $6,750. Plaintiff avers that Great American's failure to make that payment constituted a willful breach of the attachment order issued by this court and requests that Great American therefore be held liable to plaintiff for that amount.

We are now called upon to determine whether the attachment order applied to the amount Budai received in commutation of his workmen's compensation claim. We would note at the outset that this appears to be a case of first impression for the courts of this commonwealth. Therefore, an examination of the relevants rules and statutes governing the attachment of wages, salary and commissions in support actions is necessary.

Rule 1910.22(a) of the Pa.R.C.P. specifically grants the court the power to order such an attachment. Subsection (e) provides, inter alia, that the employer shall pay to the domestic relations section the full amounts determined by the court. That subsection further provides that upon failure to pay, the employer may be held in contempt. Subsection

(f) provides that the attachment shall continue until dissolved by the court.

23 Pa.C.S §4348 also sets forth guidelines for the attachment of income in support actions.[3] Subsection (i) sets out the requirements for notice of the attachment to the employer of an obligor.[4] Those requirements include notice that the attachment payment must be sent to the domestic relations section of the court and that the attachment order is binding upon the employer until further notice. The notice also requires that the employer be informed of the effect of non-compliance by the employer, which is specifically dealt with in subsection (k). Subsection (k)(1) provides that an employer who willfully fails to comply with an order of attachment under this chapter may be adjudged in contempt. Subsection (k)(2) provides that the employer shall be liable for any amount the employer willfully fails to withhold from income due an employee under an order of attachment of income and any amount which is withheld from such income but not forwarded to the domestic relations office.

The rationale underlying these provisions is clear. In many cases, the parties responsible for paying child support either do not make regular payments or fail altogether to honor their support obligation. In such cases, the attachment provisions provide a procedure whereby the parties entitled to support can assure themselves of receiving part or all of the support payments due them each month. Under

---

3. "Income" is defined in 23 Pa.C.S. §4302 to include workmen's compensation.

4. "Employer" is defined to include a corporation paying or obligated to pay income. As the insurance carrier required to pay Budai workmen's compensation, Great American would be considered the employer for the purposes of these statutes.

this procedure, the obligor's employer is given the responsibility of withholding a defined sum from the obligor's income and paying it directly to the domestic relations office for plaintiff.

If, pursuant to the attachment order, Great American had failed to withhold benefits that Budai received monthly prior to the communication of benefits, Great American clearly would have been liable to plaintiff for that amount pursuant to the provisions of 23 Pa.C.S. §4348. The question we must decide proceeds further, that is, whether the attachment provisions under discussion here should also apply to the $25,000 sum Budai received in the commutation of his workmen's compensation benefits.

In its answer to plaintiff's petition, Great American has taken the position that the attachment order did not apply to the $25,000 sum paid to Budai.

We disagree. Subsection (a) and (b) of 23 Pa.C.S. §4348 provide for the attachment of an obligor's income. "Income" is defined in 23 Pa.C.S. §4302 to include "workmen's compensation . . ." The definition draws no distinction between amounts of workmen's compensation received on a monthly basis due to disability and amounts received in commutation of a workmen's compensation claim. We would conclude therefore that the attachment provisions apply to any and all amounts received pursuant to a workmen's compensation claim.

Through its new matter, Great American asserts several other grounds to deny plaintiff's requested relief. We are not persuaded by any of the reasons advanced by Great American.

First, Great American asserts that had it pursued its original petition before the worker's compensation referee, it is entirely possible that Budai's workmen's compensation benefits would have either

ceased or terminated or been suspended. To the extent that this trilogy existed, Great American avers that any future benefits that Budai might have been entitled to were speculative.

We disagree. It is true that Budai's benefits may ultimately have been terminated had Great American pursued its petition. The fact of the matter, however, is that the termination petition was not pursued. Rather, Great American and Budai reached an agreement whereby Budai's workmen's compensation benefits would be commutated to the certain amount of $25,000. When the commutation agreement was approved by the Workmen's Compensation Board, Budai was legally entitled to that amount. In so far as the amount of his future benefits is concerned, they cannot be considered speculative; to the contrary, they are real and specific.

Second, Great American avers that Budai was primarily responsible for seeing that plaintiff would be paid any monies that she may be entitled to under the commutation of benefits and that Budai did, in fact, agree to do so at the hearing before the Workmen's Compensation Appeal Board. Great American further asserts that Budai is primarily liable for the support of his children and should not be permitted to avoid his obligation to them by taking the entire commuted sum for his own use without providing for a portion of it to be set aside for his children.

While it is true that Budai is liable for the support of his children, this averment by Great American ignores the impact of the attachment provisions and its concomitant duties. Under the attachment order, Great American was specifically directed to withhold part of Budai's workmen's compensation benefits and forward the amount to the domestic relations office. This duty was continued until the attachment was dissolved by the court. It could not

be discharged by an agreement between Great American and Budai whereby Budai would personally insure that plaintiff would be paid any monies due to her for support. Guaranteeing that the monies due under the attachment order were paid to plaintiff was the direct responsibility and obligation of Great American. If Budai is able to avoid his obligation of support with regard to the commuted sum, it is because of Great American's failure to fulfill its appointed responsibility. At the very least, Great American should have notified plaintiff of the pending commutation of benefits so that she could have proceeded to protect her interests.

Third, Great American avers that had plaintiff been advised of the pending commutation hearing she would only have obtained a right to participate in the negotiations which eventually resolved the workmen's compensation case and would not have necessarily been entitled to a sum of $6,750. Great American further asserts that plaintiff has no greater rights now then she would have had at that time.

We disagree. Whether or not the plaintiff would only have obtained a right to participate in the negotiations and whether she would have been entitled to $6,750 or to any sum of money (at that point in time) is unimportant for the resolution of the question involved here. At the conclusion of the negotiations, an agreement was reached whereby Budai's benefits were commuted to $25,000. When the commutation was approved and Budia became entitled to that amount, plaintiff had an immediate right to an attachment against her interest in that sum.

Finally Great American asserts that even accepting the plaintiff's argument that she is entitled to 27 percent of the commuted benefits, plaintiff would only be entitled to $5,500 because Budai did not receive $25,000 since an attorney's fee of $5,000 was

deducted from that sum, giving to Budai a net monetary recovery of $20,000.

Again we must disagree. The definition of income under section 4302 does not contain any provision for deducting amounts paid for attorney's fees. The amount of Budai's commutation of benefits was $25,000; that is, therefore, the amount of Budai's workmen's compensation benefits and the sum against which plaintiff's attachment must be applied.

Having concluded that the attachment order applied to the $25,000 sum paid to Budai and that Great American failed to withhold any of that sum and forwarded it to the Domestic Relations Office, we hold Great American to be in contempt of court for violating the attachment order of October 1, 1987 and to be liable to plaintiff for the sum of money not withheld and forwarded to her. Prior to the commutation of benefits, plaintiff had been receiving 27 percent of Budai's workmen's compensation benefits. We conclude that plaintiff was similarly entitled to 27 percent of the commuted sum of $25,000, which amount figures to be $6,750. We hold therefore that Great American is liable to plaintiff in the amount of $6,750. We will also grant plaintiff's request for attorney's fees; however, her request for interest is denied.

## ORDER OF COURT

Now, October 11, 1988, in conformity with the opinion which is appended, plaintiff's petition for rule to show cause why the Great American Insurance Company should not be held in contempt of court is granted, and plaintiff is hereby awarded the amount of $6,750 plus attorney's fees. If counsel cannot agree upon the precise amount of monies

due to plaintiff's counsel, an appropriate motion shall be presented to the court requesting a hearing on the issue.